ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| **FRANCES A. GARCIA JOGLAR**<br><br>Recurrida<br><br>v.<br><br>**AUTORIDAD DE ACUEDUCTOS Y ALCANTARILLADOS (AAA), ESTADO LIBRE ASOCIADO DE PUERTO RICO ("ELA"), MAPFRE PRAICO INSURANCE COMPANY y OTROS**<br><br>Demandados<br><br>**ANTILLES INSURANCE COMPANY**<br><br>Peticionario | TA2025CE00383<br><br><br>consolidado con | **CERTIORARI** procedente del Tribunal de Primera Instancia, Sala Superior de **Bayamón**<br><br>Caso Núm.: **DO2025CV00028**<br><br>Sobre: Impericia Profesional Contra Otros Profesionales (No Médicos) |
| **FRANCES A. GARCIA JOGLAR**<br><br>Recurrida<br><br>v.<br><br>**AUTORIDAD DE ACUEDUCTOS Y ALCANTARILLADOS de PUERTO RICO y OTROS**<br><br>Peticionarios | TA2025CE00399 | **CERTIORARI** procedente del Tribunal de Primera Instancia, Sala Superior de **Bayamón**<br><br>Caso Núm.: **DO2025CV00028**<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Boria Vizcarrondo, Jueza Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 17 de octubre de 2025.

Comparece ante nos Antilles Insurance Company (Antilles o parte peticionaria) mediante una *Petición de Certiorari* bajo el alfanumérico TA2025CE00383 en la que solicita que revoquemos una *Resolución Interlocutoria* emitida el 4 de agosto de 2025 por el

Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI).[1] Por medio de dicha determinación, el foro primario declaró No Ha Lugar su *Moción de Reconsideración* y la ordenó a contestar la demanda dentro de diez (10) días, so pena de anotarle la rebeldía.[2]

De otra parte, la Autoridad de Acueductos y Alcantarillados (AAA), y su aseguradora, MAPFRE PRAICO Insurance Company (MAPFRE), (en conjunto, parte peticionaria) comparecieron también por medio de una *Petición de Certiorari* bajo el alfanumérico TA2025CE00399.[3] La AAA y MAPFRE suplican que revoquemos la *Resolución* emitida por el TPI el 18 de julio de 2025.[4] Por medio de dicho dictamen, el foro primario dictaminó No Ha Lugar su *Moción de Desestimación.*[5]

El 22 de septiembre de 2025, la señora Frances A. García Joglar (Sra. García Joglar o parte recurrida) radicó una *Oposición a Petición de Certiorari de Antilles Insurance Company* y una *Oposición a Petición de Certiorari de la Autoridad de Acueductos y Alcantarillados y MAPFRE PRAICO Insurance Company*.

Por su parte, el Gobierno de Puerto Rico (Gobierno), por conducto de la Oficina del Procurador General de Puerto Rico, presentó un *Memorando en Oposición a la Expedición de los Autos de Certiorari* el 25 de septiembre de 2025.

Por los fundamentos que pormenorizamos a continuación, denegamos la expedición del recurso de *certiorari* de la AAA y MAPFRE; y expedimos el auto de *certiorari* de Antilles, y consecuentemente, revocamos la **Resolución emitida el 21 de julio de 2025**.[6]

---

[1] Sistema Unificado de Manejo y Administración de Casos (SUMAC), Entrada Núm. 54. Notificada y archivada en autos el 4 de agosto de 2025.
[2] *Íd.*, Entrada Núm. 51.
[3] Mediante la *Resolución* emitida el 5 de septiembre de 2025, notificada ese mismo día, consolidamos ambos recursos de epígrafe.
[4] SUMAC, Entrada Núm. 49. Notificada y archivada en autos el 18 de julio de 2025.
[5] *Íd.*, Entrada Núm. 32.
[6] *Íd.*, Entrada Núm. 50. Notificada y archivada en autos el 21 de julio de 2025.

**I.**

El caso de marras tiene su génesis el 3 de febrero de 2025 cuando la Sra. García Joglar presentó una *Demanda* contra la AAA, MAPFRE, Antilles y el Gobierno, ante la falta de personalidad del Negociado del Cuerpo de Bomberos de Puerto Rico (Cuerpo de Bomberos); en concepto de daños y perjuicios.[7] Adujo la Sra. García Joglar que, a las 6:16am del 9 de febrero de 2024, fallecieron sus suegros, el señor Andrés López Alayón y la señora Nelia Beatriz López del Valle (Sra. López del Valle), a causa de un incendio que ocurrió en la residencia de estos localizada en el Municipio de Dorado. Planteó la Sra. García Joglar que los vecinos escucharon los gritos de la Sra. López del Valle mientras el fuego se esparcía por el hogar. Además, expresó que, al momento del incidente, los hidrantes cercanos a la residencia no tenían abasto de agua ni presión para poder auxiliarlos.

Alegó que la AAA falló al no verificar que los hidrantes tuvieran agua o presión suficiente para responder al incendio; ostentaba un deber ministerial de aprobar el diseño de los hidrantes; y actuó negligentemente al momento de autorizar e instalar los hidrantes, al igual que inspeccionarlos y mantenerlos.

Asimismo, expuso que el Cuerpo de Bomberos no pudo apagar el fuego oportunamente por la insuficiencia de agua y presión en los hidrantes cercanos; acudió a la residencia con los tanques de agua vacíos; y falló en su deber de inspeccionar los hidrantes cercanos a la residencia y/o de informarle a la AAA de las deficiencias de estos al momento de los hechos.

Por tal razón, la Sra. López del Valle solicitó del foro primario una suma no menor de $1,000,000 por su sufrimiento, daños

---

[7] *Íd.*, Entrada Núm. 1.

morales y angustias mentales como consecuencia de la muerte trágica de sus suegros.

El 14 de abril de 2025, MAPFRE radicó una *Contestación a la Demanda,*[8] y el Gobierno, por sí y en representación del Cuerpo de Bomberos, presentó una *Contestación a Demanda* al siguiente día.[9]

Posteriormente, el 23 de mayo de 2025, la AAA presentó una *Moción de Desestimación,* al amparo de la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2.[10] Por medio de esta, la AAA adujo que las alegaciones planteadas en su contra eran sobre fallas con la cantidad de agua y presión, las cuales se enmarcaban en la inmunidad dispuesta en la Sección 4(c) de la *"Ley de Acueductos y Alcantarillados de Puerto Rico"*, Ley Núm. 40 del 1 de mayo de 1945 (Ley Núm. 40-1945), según enmendada, 22 LPRA sec. 144. Además, indicó la AAA que las alegaciones sobre negligencia en el diseño eran insuficientes para establecer una reclamación válida en contra de la AAA, y no tenía un deber ministerial de inspeccionar o proveer mantenimiento a las bocas de incendio. En la alternativa, sostuvo que la acción relacionada al diseño estaba prescrita.

El 29 de mayo de 2025, MAPFRE presentó una *Moción Uniéndose a Moción de Desestimación Presentada por la Autoridad de Acueductos y Alcantarillados.*[11]

Antilles también radicó una *Moción de Desestimación Parcial* el 5 de junio de 2025,[12] al amparo de la Regla 10.2 de Procedimiento Civil, *supra,* a la cual le anejó la póliza otorgada a favor del Cuerpo de Bomberos. Antilles suplicó la desestimación de la reclamación radicada en su contra dado a que la acción de epígrafe era solo sobre daños puramente emocionales, por lo cual no se activaba la Cubierta A del contrato de seguro. Específicamente, expuso que esos

---

[8] *Íd.*, Entrada Núm. 21.
[9] *Íd.*, Entrada Núm. 22.
[10] *Íd.*, Entrada Núm. 32.
[11] *Íd.*, Entrada Núm. 34.
[12] *Íd.*, Entrada Núm. 38.

daños no constituían una lesión corporal o "*bodily injury*;" los servicios de extinción de incendios eran servicios profesionales excluidos de la cubierta por virtud de la Exclusión de Servicios Profesionales Designados; y el incidente ocurrió fuera de las localidades o proyectos designados de la póliza, por lo que no aplicaba la cubierta.

El 27 de junio de 2025, la Sra. López del Valle presentó una *Oposición a "Moción de Desestimación Parcial" de Antilles Insurance Company* donde arguyó que la solicitud de desestimación de Antilles debía ser denegada de plano por no tener apoyo en derecho.[13] En cuanto al primer señalamiento realizado por Antilles para suplicar la desestimación del caso, la Sra. López del Valle sostuvo que "*bodily injury*" incluía expresamente los daños morales y angustias mentales. Respecto al segundo planteamiento argüido por Antilles, expresó la Sra. López del Valle que los incumplimientos aludidos en la demanda con relación al Cuerpo de Bomberos eran relacionados a los deberes públicos de este, por ende, eran distintos a los servicios profesionales contemplados en la jurisprudencia de Puerto Rico. Por último, la Sra. López del Valle adujo que tampoco procedía el tercer fundamento, pues indicó que la póliza establecía expresamente que Antilles cubría reclamaciones surgidas "en cualquier lugar del Estado Libre Asociado de Puerto Rico".[14]

El 7 de julio de 2025, la Sra. López del Valle presentó una *Oposición "Moción de Desestimación" de la Autoridad de Acueductos y Alcantarillados*.[15] Expuso que la solicitud de desestimación de la AAA debía ser denegada, ya que la Sección 4(c) de la Ley Núm. 40-1945, *supra*, sec. 144, no aplicaba a los hechos del pleito de marras. Lo anterior, pues dicha disposición se dirigía únicamente a proteger

---

[13] *Íd.*, Entrada Núm. 41.
[14] *Íd.*, pág. 3.
[15] *Íd.*, Entrada Núm. 45.

a la AAA contra demandas sobre interrupción del servicio de agua o calidad del agua servida, y no por actos u omisiones de esta con relación a su deber de mantener y reparar los hidrantes en Puerto Rico.

El 18 de julio de 2025, el TPI emitió una *Resolución* en la que declaró No ha Lugar la petición de desestimación de la AAA,[16] a la cual se unió MAPFRE.

El foro primario emitió, de igual modo, una *Resolución* el 21 de julio de 2025 donde denegó la solicitud de desestimación de Antilles.[17]

Inconformes, Antilles radicó una *Moción de Reconsideración* el 4 de agosto de 2025,[18] y la AAA y MAPFRE radicaron una *Moción de Reconsideración* ese mismo día.[19] Sin embargo, el foro primario denegó ambas peticiones de reconsideración.[20]

El 14 de agosto de 2025, la AAA radicó una *Contestación a la Demanda*.[21]

Insatisfecha, Antilles presentó una *Petición de Certiorari* el 29 de agosto de 2025 ante nos y planteó los siguientes señalamientos de error:

> **ERRÓ EL HONORABLE TPI AL NO ADJUDICAR SI LA RECLAMACIÓN DE DAÑOS MENTALES CONSTITUYE UNA LESIÓN FÍSICA, SEGÚN DEFINIDA EN LA PÓLIZA, QUE ACTIVE LA CUBIERTA DE SEGURO.**
>
> **ERRÓ EL HONORABLE TPI AL DETERMINAR QUE LAS ALEGACIONES EN CONTRA DEL CUERPO DE BOMBEROS NO SE RELACIONAN A LA NEGLIGENCIA DE UN PROFESIONAL Y QUE NO APLICA LA EXCLUSIÓN DE SERVICIOS PROFESIONALES DE LA PÓLIZA.**
>
> **ERRÓ EL HONORABLE TPI AL DETERMINAR QUE HAY QUE DETERMINAR A QUIÉN LE PERTENECEN LOS HIDRANTES PARA PODER DETERMINAR SI ES APLICABLE LA LIMITACIÓN DE CUBIERTA DE LOCALIDADES O PROYECTOS DESIGNADOS.**

---

[16] *Íd.*, Entrada Núm. 49. Notificada y archivada en autos el 18 de julio de 2025.
[17] *Íd.*, Entrada Núm. 50. Notificada y archivada en autos el 21 de julio de 2025.
[18] *Íd.*, Entrada Núm. 51.
[19] *Íd.*, Entrada Núm. 52.
[20] *Íd.*, Entradas Núms. 53-54.
[21] *Íd.*, Entrada Núm. 57.

Inconforme también, la AAA y MAPFRE presentaron una *Petición de Certiorari* el 3 de septiembre de 2025 ante nos y realizaron el siguiente planteamiento de error:

**EL TPI COMETIÓ UN ERROR MANIFIESTO DE DERECHO AL NEGARSE A DESESTIMAR LA DEMANDA CONTRA LA AAA, EN VIOLACIÓN A LA INMUNIDAD ABSOLUTA QUE LA SECCIÓN 4(C) DE LA LEY NÚM. 40 LE CONFIERE FRENTE A RECLAMACIONES POR DAÑOS DERIVADOS DE LA IMPUREZA, IRREGULARIDAD O INSUFICIENCIA DEL AGUA SERVIDA.**

El 22 de septiembre de 2025, la Sra. García Joglar radicó una *Oposición a Petición de Certiorari de Antilles Insurance Company*. Según ella, el foro primario actuó correctamente al reconocer la norma establecida de que los daños morales y angustias mentales originadas de una lesión corporal de una persona con vínculos cercanos estaban cubiertos por una póliza de responsabilidad pública; al denegar la aplicación de la exclusión de la cubierta por servicios profesionales; y al resolver que, en esta etapa de los procedimientos, no se encontraba en posición para resolver si no aplicaba la cubierta en el presente pleito debido a la localidad del incidente.

La Sra. García Joglar también radicó una *Oposición a Petición de Certiorari de la Autoridad de Acueductos y Alcantarillados y MAPFRE PRAICO Insurance Company* el mismo 22 de septiembre de 2025. Alegó que el foro primario actuó correctamente al determinar la no aplicabilidad de la inmunidad estatutaria a favor de la AAA, bajo la Sección 4(c) de la Ley Núm. 40-145, *supra*, sec. 144. En síntesis, planteó que no le cobijaba a la AAA dicha inmunidad, pues adujo que la demanda no se fundamentaba en daños caudados por la impureza, irregularidad o insuficiencia del agua servida a consumidores, sino por la negligencia crasa de la AAA al incumplir su deber ministerial, a la luz de la Ley 494-2004, de mantener,

reparar y coordinar de forma interagencial el funcionamiento adecuado de los hidrantes.

Por su parte, el Gobierno de Puerto Rico (Gobierno), por conducto de la Oficina del Procurador General de Puerto Rico, presentó un *Memorando en Oposición a la Expedición de los Autos de Certiorari* el 25 de septiembre de 2025. En cuanto a Antilles expuso que el foro primario actuó correctamente al entender que el concepto de "*bodily injury*" incluía daños mentales. Expresó además el Gobierno que las labores de los bomberos no versaban sobre servicios profesionales, sino de tareas físicas o manuales; y la póliza aplicaba en el territorio de Puerto Rico.

Respecto a la AAA y MAPFRE, el Gobierno arguyó que el foro *a quo* actuó correctamente al denegar la solicitud de desestimación de la AAA y MAPFRE, pues la Sección 4(c) de la Ley Núm. 40-1945, *supra,* sec. 144, se refería a una prohibición para demandar a la AAA por fallas en el servicio privado ofrecidos a la ciudadanía, cuando el presente caso no abordaba la interrupción del servicio de agua.

## II.

## A.

El auto de *certiorari* es el vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones interlocutorias realizadas por un foro inferior. La expedición del auto descansa en la sana discreción del tribunal. *Caribbean Orthopedics Products of Puerto Rico, LLC v. Medshape, Inc.*, 207 DPR 994, 1004 (2021); *800 Ponce de León, Corp. v. American International Insurance Company of Puerto Rico*, 205 DPR 163, 174-175 (2020). En los casos civiles, la Regla 52.1 de Procedimiento Civil, *supra,* R. 52.1, delimita los asuntos aptos para revisión interlocutoria ante el Tribunal de Apelaciones mediante el recurso de *certiorari. Caribbean Orthopedics Products of Puerto Rico, LLC v. Medshape, Inc., supra,* pág. 1004;

*Scotiabank de Puerto Rico v. ZAF Corporation*, 202 DPR 478, 486-487 (2019); *IG Builders v. BBVAPR,* 185 DPR 307, 336-337 (2012). La citada regla establece que:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> Regla 52.1 de Procedimiento Civil, *supra* (Énfasis suplido); véase además, *Scotiabank de Puerto Rico v. ZAF Corporation, supra,* pág. 487.

La característica distintiva del recurso de *certiorari* "se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. El concepto *discreción* necesariamente implica la facultad de elegir entre diversas opciones". *IG Builders v. BBVAPR, supra,* pág. 338. A pesar de lo anterior, la discreción no debe hacerse en abstracción del resto del derecho, sino que debe ejercerse de forma razonable con el propósito de llegar a una opinión justiciera. *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, 98 (2008). Precisamente, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, 215 DPR __ (2025), instituye los criterios que se deben tomar en consideración para poder ejercer sabiamente la facultad discrecional de expedir un auto de *certiorari.* Estos factores son los siguientes:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Lo anterior impone al Tribunal de Apelaciones la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del foro de instancia, de forma que no se interrumpa injustificadamente el curso corriente de los casos ante ese foro. Por tanto, de no estar presente ninguno de los criterios esbozados, procede que este foro superior se abstenga de expedir el auto solicitado. *Torres Martínez v. Torres Ghigliotty*, *supra*, págs. 96-97.

**B.**

Por otro lado, en nuestro ordenamiento jurídico, una persona puede solicitar la desestimación de una demanda presentada en su contra "cuando surja de las alegaciones de la demanda que alguna defensa afirmativa derrotará la pretensión del demandante". *Eagle Security Police, Inc., v. Dorado*, 211 DPR 70, 83 (2023); Regla 10.2 de Procedimiento Civil, *supra*. En lo pertinente, el inciso (5) de dicha regla establece que una parte demandada puede fundamentar su petición de desestimación invocando la defensa de que la demanda deja de exponer una reclamación que justifique la concesión de un remedio. *Díaz Vázquez v. Colón Pena*, 214 DPR 1135, 1149 (2024); *Trans-Oceanic Life Ins., v. Oracle Corp.*, 184 DPR 689, 701 (2012). De esta forma, la desestimación que se solicita se dirige a atender el

caso en sus méritos y no a sus aspectos procesales. *Eagle Security Police, Inc., v. Dorado, supra,* pág. 83; *Montañez v. Hosp. Metropolitano,* 157 DPR 96, 104-105 (2002).

Una vez se radica una moción bajo la Regla 10.2(5) de Procedimiento Civil, *supra,* R. 10.2(5), los tribunales tienen la obligación de tomar como ciertos- y de la forma más favorable para la parte demandante- todos los hechos bien alegados en la demanda y que hayan sido aseverados de forma clara y concluyente. *González Méndez v. Acción Social,* 196 DPR 213, 234-235 (2016); *Rivera Sanfeliz v. Jta. Dir. FirstBank,* 193 DPR 38, 49 (2015); R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho procesal civil,* 6ª ed. rev., San Juan, Ed. LexisNexis de Puerto Rico, 2017, pág. 307. Asimismo, los tribunales están llamados a interpretar las alegaciones de forma conjunta, liberal y de la forma más favorable a la parte demandante. *González Méndez v. Acción Social, supra,* pág. 234; *Torres, Torres v. Torres Serrano,* 179 DPR 481, 501-502 (2010). Por lo tanto, para que proceda una solicitud de desestimación de esta índole, " 'tiene que demostrarse de forma certera en ella que el demandante no tiene derecho a remedio alguno bajo cualquier estado de Derecho que se pudiese probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor' ". *Eagle Security Police, Inc., v. Dorado, supra,* pág. 84 (*citando a Rivera Sanfeliz v. Jta. Dir. FirstBank, supra,* pág. 49).

Nótese que nuestro sistema jurídico no establece requisitos complejos para la redacción de una demanda. *Eagle Security Police, Inc., v. Dorado, supra,* pág. 84; Regla 6.5 de Procedimiento Civil, *supra,* R. 6.5. Lo anterior se debe a que "la finalidad del proceso legal está enmarcado en el principio rector de impartir justicia y no en fórmulas técnicas en la redacción de las alegaciones". *Eagle Security Police, Inc., v. Dorado, supra,* pág. 84. Se desprende de la Regla 6.5(a) de Procedimiento Civil, *supra,* R. 6.5(a), que "[c]ada aseveración en

una alegación será sencilla, concisa y directa. No se exigirán fórmulas técnicas para la redacción de las alegaciones o mociones. Todas las alegaciones se interpretarán con el propósito de hacer justicia". De igual modo, la Regla 6.1 de Procedimiento Civil, *supra*, R. 6.1, expone que:

> Una alegación que exponga una solicitud de remedio contendrá:
> (1) una relación sucinta y sencilla de los hechos demostrativos de que la parte peticionaria tiene derecho a un remedio, y
> (2) una solicitud del remedio a que crea tener derecho. Podrán ser solicitados remedios alternativos o de diversa naturaleza.

Así, "el demandante no está obligado a alegar todos los hechos que prueben su caso al incoar una causa de acción, es decir, no tiene que exponer con detalle el trasfondo fáctico en el que basa su reclamación". *Eagle Security Police, Inc., v. Dorado, supra*, págs. 84-85; *Teoniro v. Hospital Dr. Pila,* 159 DPR 777, 784 (2003). Es harto conocido que "el propósito de las alegaciones es notificarle de forma general a la parte demandada cuáles son las reclamaciones en su contra para que pueda comparecer a defenderse si así lo desea". *Eagle Security Police, Inc., v. Dorado, supra*, pág. 85.

### C.

Quien por culpa o negligencia le causa daño a otra, dicha persona viene obligada a repararlo. Artículo 1536 del *"Código Civil de Puerto Rico" de 2020* (Código Civil de 2020), 31 LPRA sec. 10801. Asimismo, el Artículo 1540 del Código Civil de 2020, *supra*, sec. 10805, establece las personas que responden por los daños causados por la culpa o negligencia de sus dependientes.

La culpa o negligencia "consiste en la falta del debido cuidado, por no anticipar ni prever las consecuencias de un acto u omisión, que una persona prudente y razonable habría de prever en las mismas circunstancias". *Cruz Flores v. Hospital Ryder Memorial, Inc.,* 210 DPR 465, 484 (2022) (Énfasis suprimido); *Pérez Hernández*

*v. Lares Medical Center, Inc.*, 207 DPR 965, 976-977 (2021). Específicamente, la negligencia por omisión surge cuando no se anticipa ni evita la ocurrencia de daños que racionalmente pudieron preverse. *Cruz Flores v. Hospital Ryder Memorial, Inc.*, *supra*, pág. 484; *López v. Porrata Doria*, 169 DPR 135, 151 (2006); *Toro Aponte v. E.L.A.*, 142 DPR 464 (1997). Para determinar si una omisión, en efecto, genera responsabilidad se considerarán dos (2) requisitos; estos son, (1) la existencia o inexistencia de un deber jurídico de actuar por parte del supuesto causante del daño, y (2) si de haberse realizado el acto omitido se hubiera evitado el daño. *Toro Aponte v. E.L.A.*, *supra*; *Gladys Arroyo López y Otros v. E.L.A. et al.*, 126 DPR 682, 686 (1990).

En cuanto al daño, este se ha definido como " 'todo menoscabo material o moral causado contraviniendo una norma jurídica, que sufre una persona y del cual haya de responder otra' ". *López v. Porrata Doria*, *supra*, pág. 151 (*citando a* J. Puig Brutau, *Fundamentos de Derecho Civil*, Barcelona, Ed. Bosch, 1983, T. 2, Vol. 3, pág. 92). De no existir daño o perjuicio, no existirá una obligación de indemnizar. *López v. Porrata Doria*, *supra*, pág. 151. Por ello, es esencial que se demuestre la realidad de un daño y su cuantía. *López v. Porrata Doria*, *supra*, pág. 151.

Los daños se dividen en patrimoniales y no patrimoniales. *Sagardía De Jesús v. Hosp. Aux. Mutuo*, 177 DPR 484, 505 (2009). Los primeros consisten en el menoscabo monetario sobre el patrimonio del perjudicado. *Sagardía De Jesús v. Hosp. Aux. Mutuo*, *supra*, págs. 505-506. Por su parte, los daños no patrimoniales " 'son en principio aquellos cuya valoración en dinero no tiene la base equivalencial que caracteriza a los patrimoniales, por afectar precisamente a elementos o intereses de difícil valoración pecuniaria' ". *Sagardía De Jesús v. Hosp. Aux. Mutuo*, *supra*, pág.

506 (*citando a* J. Santos Briz, *Tratado de Derecho Civil*, Barcelona, Ed. Bosch, 2003, T. III, pág. 457).

Bajo los daños no patrimoniales se encuentran los daños morales. Sin embargo, se ha distinguido entre los daños morales puros, los cuales no producen repercusiones de carácter patrimonial; y los daños morales impropios o patrimoniales indirectos que transcienden valores del patrimonio. *Sagardía De Jesús v. Hosp. Aux. Mutuo, supra*, pág. 506. De forma general, los daños morales son "infligidos a las creencias, los sentimientos, la dignidad, la estima social o la salud física o psíquica del perjudicado", así como todo dolor físico o moral. *Sagardía De Jesús v. Hosp. Aux. Mutuo, supra*, pág. 506; *Rivera v. S.L.G. Díaz*, 165 DPR 408, 428 (2005). Dichos daños morales son amplios y abarcan el dolor físico o corporal, las angustias mentales, hasta los daños o las lesiones corporales. *Sagardía De Jesús v. Hosp. Aux. Mutuo, supra*, págs. 506-507. En esa misma línea, un "acto torticero puede producir una lesión o daño corporal, el cual puede consistir desde golpes leves hasta un daño grave que produzca la muerte. Este tipo de daño corporal es resarcible y ha sido reconocido como independiente dentro del daño moral". *Sagardía De Jesús v. Hosp. Aux. Mutuo, supra*, pág. 507.

Ahora bien, además de la existencia de un daño real y un acto culposo o negligente, es esencial la existencia de un nexo causal para apoyar una reclamación en concepto de daños y perjuicios. La doctrina de causalidad dicta que " 'no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general' ". *Nieves Díaz v. González Massas*, 178 DPR 820, 844 (2010) (*citando a Sociedad de Gananciales v. Jerónimo Corp.*, 103 DPR 127, 134 (1974)). Este elemento es imprescindible en una causa de acción de daños y perjuicios, pues vincula al daño directamente con el hecho

antijurídico. *Nieves Díaz v. González Massas, supra,* págs. 844-845. Además, el nexo causal está íntimamente ligado con la previsibilidad. *Nieves Díaz v. González Massas, supra,* pág. 844. El deber de cuidado incluye la obligación de anticipar y el de evitar la ocurrencia de los daños, cuya probabilidad es razonablemente previsible. *Administrador v. ANR,* 163 DPR 48, 60 (2004). Sin embargo, el deber de prever no se extiende a todo peligro imaginable que concebiblemente pueda amenazar la seguridad, sino que es aquel que llevaría a una persona prudente a anticiparlo. *S.L.G. Colón Rivas v. E.L.A.,* 196 DPR 855, 865 (2016); *Hernández v. Gobierno de la Capital,* 81 DPR 1031, 1038 (1960). Asimismo, salvo los casos expresamente mencionados en ley o por alguna obligación, "nadie responde de aquellos sucesos que no hubieran podido preverse, o que, previstos, fueran inevitables". Artículo 1166 del Código Civil de 2020, *supra,* sec. 9318.

## D.

Con la Ley Núm. 40-1945, *supra,* se estableció la AAA como corporación pública e instrumentalidad gubernamental autónoma del Gobierno. Sección 2 de la Ley Núm. 40-1945, *supra,* sec. 142. Lo anterior, con el propósito de "proveer y ayudar a proveer a los ciudadanos un servicio adecuado de agua y de alcantarillado sanitario y cualquier otro servicio o instalación incidental o propio de éstos". Sección 4 de la Ley Núm. 40-1945, *supra,* sec. 144. Entre los derechos y poderes que posee la AAA, está "[d]emandar y ser demandada como tal corporación, excepto que no podrá ser demandada por daños y perjuicios causados por la impureza, irregularidad o insuficiencia real o alegada del agua servida por ella y excepto que no se permitirá la venta judicial de propiedades de la Autoridad". Sección 4(c) de la Ley Núm. 40-1945, *supra,* sec. 144. De igual modo, la AAA tiene un deber de:

**(r)** Reparar los hidrantes (bocas de incendio) que sean identificados por el Jefe del Cuerpo de Bomberos de Puerto Rico, según lo dispuesto en el inciso (t) del Artículo 6 de la Ley Núm. 43 de 21 de junio de 1988, según enmendada. A esos efectos, coordinará con el Jefe del Cuerpo de Bomberos la elaboración de un plan de trabajo que tomará en consideración los siguientes aspectos:

**1.** Desarrollo de una estructura interagencial;

**2.** evaluación, revisión y actualización constante de la información y los procedimientos de inspección, operación y mantenimiento preventivo vigentes;

**3.** desarrollo de un plan de orientación a la ciudadanía sobre la importancia de proteger los hidrantes; y

**4.** evaluación de nuevas ideas que tengan como propósito ayudar a la conservación de los hidrantes.

La Autoridad no tendrá facultad alguna en ningún tiempo ni en ninguna forma para empeñar el crédito o el poder de imponer tributos del Estado Libre Asociado de Puerto Rico o de cualquiera de sus otras subdivisiones políticas. Los bonos y otras obligaciones emitidos por la Autoridad no constituirán una deuda del Estado Libre Asociado de Puerto Rico o de ninguno de sus municipios o de sus otras subdivisiones políticas y ni el Estado Libre Asociado de Puerto Rico ni ninguno de sus municipios ni sus otras subdivisiones políticas será responsable de los mismos, ni dichos bonos u otras obligaciones se pagarán de fondo alguno que no sean fondos de la Autoridad.

Sección 4(r) de la Ley Núm. 40-1945, *supra,* sec. 144.

### E.

Por otro lado, nuestro máximo foro ha resuelto que "las controversias relacionadas con la figura del contrato de seguros revisten un interés público y se han resuelto al amparo de las disposiciones del Código de Seguros y su jurisprudencia interpretativa, considerando al Código Civil como fuente de derecho supletorio". *SLG Albert-García v. Integrand Assurance Company.*, 196 DPR 382, 389 (2016); *Jiménez López v. Simed*, 180 DPR 1, 8 (2010). Este estatuto define "seguro*"* como aquel "contrato mediante el cual una persona se obliga a indemnizar a otra o a pagarle o a proveerle un beneficio específico o determinable al producirse un suceso incierto previsto en el mismo". Artículo 1.020 del Código de Seguros, *supra,* sec. 102. Asimismo, define "asegurador" como aquella una persona que se dedique a la contratación de seguros

según definido en el Artículo 1.050 del Código de Seguros, *supra*, sec. 105. Artículo 1.030 del Código de Seguros, *supra*, sec. 103.

Toda aseguradora que expida una póliza asegurando a una persona contra daños o perjuicios, por causa de responsabilidad legal por lesiones corporales, muerte o daños a la propiedad de una tercera persona, será responsable cuando ocurriere una pérdida cubierta por dicha póliza. Artículo 20.010 del Código de Seguros, *supra*, sec. 2001. A esos efectos, "[l]a persona que sufriere los daños y perjuicios tendrá, a su opción, una acción directa contra el asegurador conforme a los términos y limitaciones de la póliza, acción que podrá ejercitar contra el asegurador solamente o contra éste y el asegurado conjuntamente". Artículo 20.030 del Código de Seguros, *supra*, sec. 2003. Además, "el pago de dicha pérdida por el asegurador hasta el grado de su responsabilidad por la misma, con arreglo a la póliza, no dependerá del pago que efectúe el asegurado en virtud de sentencia firme dictada contra él con motivo del suceso, ni dependerá de dicha sentencia". Artículo 20.010 del Código de Seguros, *supra*, sec. 2001.

En esa misma línea, es meritorio indicar que cualquier acción incoada conforme al Artículo 20.030 del Código de Seguros, *supra*, sec. 2003 estará "sujeta la acción a las condiciones de la póliza de seguros o contrato y a las defensas que pudieran alegarse por el asegurador en acción directa instada por el asegurado". Artículo 20.030 del Código de Seguros, *supra*, sec. 2003. Específicamente, nuestro Tribunal Supremo de Puerto Rico ha establecido que:

> El asegurador se obliga, dentro de los límites establecidos en el contrato, a cubrir la obligación de indemnizar a un tercero por los daños y perjuicios causados por el asegurado. Como puede suponerse, sin embargo, en la práctica no existe un seguro que cobije toda la responsabilidad en que puede incurrir una persona. Lo que existe son seguros de responsabilidad civil que cubren *determinadas* actividades del asegurado, capaces de producir daños.

*Quiñones López v. Manzano Pozas*, 141 DPR 139, 153-154 (1996).

De igual modo, un contrato de seguros, tal como cualquier otro contrato, constituye ley entre las partes, conforme al Artículo 1230 del Código Civil de 2020, supra, sec. 9751. *Quiñones López v. Manzano Pozas, supra*, pág. 154. Es decir, ambas partes, tanto el asegurador como el asegurado, se obligan a cumplir con los términos y condiciones de la póliza. *Torres v. Estado Libre Asociado de Puerto Rico*, 130 DPR 640, 651-652 (1992).

Ahora bien, los contratos de seguros, como son considerados contratos de adhesión, se interpretan liberalmente a favor del asegurado. *López Atlantic Southern Ins. Co.*, 158 DPR 562, 568 (2003). Sin embargo, "esta norma *no* tiene el efecto de obligar a que se interprete a favor del asegurado una cláusula que favorece al asegurador y cuyo significado y alcance es claro y libre de ambigüedad". *Quiñones López v. Manzano Pozas, supra*, pág. 155. (Énfasis suplido en el original). Bajo dichas circunstancias, la misma debe considerarse obligatoria para el asegurado. *Quiñones López v. Manzano Pozas, supra*, pág. 155. En particular:

> Las cláusulas de exclusión en especial deben interpretarse restrictivamente en contra del asegurador. Barreras, supra, 235. Del otro lado, si el lenguaje del contrato es explícito, no queda margen para interpretaciones que violenten obligaciones contraídas al amparo de la ley, que se atengan a lo acordado por las partes y que no contravengan el interés público. Barreras, supra, loc. cit.; 1 Couch On Insurance, secs. 15:37, 15:38, 15:47.
>
> *Rivera v. Insurance Co. of P.R.*, 103 DPR 91, 93-94 (1974).

**F.**

Nuestro máximo foro ha indicado que en los casos en los cuales una póliza no incluye una definición para "servicios profesionales", se utiliza su acepción legal. *Viruet et al. v. SLG Casiano-Reyes*, 194 DPR 271, 280 (2015). Precisamente, en el contexto de cláusulas de exclusión en materia de seguros, "se ha

resuelto que un servicio profesional conlleva una vocación, llamado, ocupación o empleo que supone, además, algún tipo de conocimiento, labor o destreza especializada. Asimismo, las habilidades que requiere un servicio profesional son predominantemente intelectuales o mentales, no físicas o manuales". *Viruet et al. v. SLG Casiano-Reyes*, *supra*, págs. 282-281. El concepto "profesional" implica la utilización del discernimiento, según los criterios infundidos por medio de estudios o a base de algún conocimiento especializado. *Viruet et al. v. SLG Casiano-Reyes*, *supra*, pág. 281. En otras palabras:

> [U]n servicio profesional depende de si la persona actúa empleando el ingenio y adiestramiento especial propio de un profesional. *David Lerner Assoc., Inc. v. Phila. Indem. Ins. Co.*, supra. A base de lo anterior, quedan excluidas las actividades que envuelven simplemente tareas físicas, manuales o clericales. *Neighborhood Housing Services v. Turner-Ridley*, supra. De igual forma, resultan insuficientes las alegaciones de mera negligencia. *Penn Star Ins. Co. v. Real Estate Consulting Specialists, Inc.*, supra. Véase, además, *Hartford Cas. Ins. Co. v. New Hope Healthcare, Inc.*, 803 F.Supp.2d 339 (E.D. Pa. 2011).
>
> *Viruet et al. v. SLG Casiano-Reyes*, *supra*, págs. 282-281; *Rivera Matos v. Estado Libre Asociado de Puerto Rico*, 204 DPR 1010, 1022 (2020).

Por otro lado, la exclusión de servicios profesionales no se limita tan solo a las profesiones tradicionales tales como abogados, médicos, ingenieros y arquitectos. *Viruet et al. v. SLG Casiano-Reyes*, *supra*, pág. 281; *Rivera Matos v. Estado Libre Asociado de Puerto Rico*, *supra*, pág. 1022.

### III.

A juicio del TPI, no procedían las solicitudes de desestimación radicadas por Antilles, AAA y MAPFRE.

En cuanto a la AAA adujo que no aplicaba la inmunidad, conforme a la Ley Núm. 40-1945, *supra*, pues el pleito se fundamentaba en la negligencia de la AAA ante su obligación de

mantener los hidrantes, y no sobre la falta de agua o impurezas en el sistema.

Respecto a Antilles, sostuvo el foro primario que las alegaciones sobre negligencia profesional y propiedades no eran aplicables al caso de marras, ya que el pleito no versaba sobre el daño causado por la negligencia de un profesional, sino de una agencia. También aludió a *Ferrer v. Lebrón García,* 103 DPR 600 (1975), para expresar que nuestro máximo foro avaló la indemnización de una aseguradora en concepto de las angustias mentales de los familiares de la allí fenecida porque se derivaban de los daños físicos o "*bodily injury*" de esta última. Por último, resolvió que, previo a resolver el caso de marras, debía determinar si los hidrantes eran propiedad del Cuerpo de Bomberos y cómo aplicaría la póliza en el pleito de marras.

Insatisfecha, Antilles acudió ante esta Curia y adujo que el foro primario incidió al no adjudicar si los daños mentales reclamados por la Sra. García Joglar constituían lesión física o "*bodily injury*, según definida por la póliza;" si aplicaba la exclusión de servicios profesionales incluida en la cubierta; y si era aplicable al presente caso la limitación de la póliza sobre las localidades o los proyectos designados en la cubierta.

Inconforme también, la AAA y MAPFRE arguyeron que el TPI incurrió en error al negarse a desestimar la demanda en su contra, en violación a la inmunidad de la Sección 4(c) de la Ley Núm. 40-1945, *supra,* sec. sec. 144. Ello, con relación a las reclamaciones por los daños derivados de la impureza, irregularidad o insuficiencia del agua servida.

Por su parte, la Sra. García Joglar y el Gobierno solicitaron de este Foro la denegatoria de ambos recursos de *certiorari.*

Tras un análisis objetivo y cuidadoso, resolvemos que el foro primario no incidió en el único señalamiento de error respecto a la

AAA y MAPFRE; empero sí incurrió en los planteamientos de error realizados por Antilles. Veamos.

Según pormenorizamos anteriormente, un contrato de seguros se considera ley entre las partes. *Quiñones López v. Manzano Pozas, supra,* pág. 154. Es decir, tanto el asegurador como el asegurado, se obligan a cumplir con los términos y condiciones de la póliza. *Torres v. Estado Libre Asociado de Puerto Rico, supra,* págs. 651-652. Específicamente, mediante este tipo de acuerdo, "una persona se obliga a indemnizar a otra o a pagarle o a proveerle un beneficio específico o determinable al producirse un suceso incierto previsto en el mismo". Artículo 1.020 del Código de Seguros, *supra,* sec. 102. Sin embargo, en la práctica, "[l]o que existe son seguros de responsabilidad civil que cubren determinadas actividades del asegurado, capaces de producir daños". *Quiñones López v. Manzano Pozas, supra,* págs. 153-154.

En el presente caso, se desprende de la póliza otorgada por Antilles a favor del Cuerpo de Bomberos,[22] que Antilles se obligó a defender a esta entidad en pleitos donde se solicitan daños por "*bodily injury*" a consecuencia de una ocurrencia que surge dentro del territorio cubierto:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.** However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

---

[22] *Íd.,* Entrada Núm. 38, *Anejo 1-Poliza,* pág. 1.

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

**b. This insurance applies to "bodily injury" and "property damage" only if:**

**(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";**

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

. . . .

(Énfasis suplido).[23]

En esa misma línea, la póliza define "*bodily injury*" como "*bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.*"[24] Es decir, la definición de este término no incluye el sufrimiento, los daños morales ni las angustias mentales solicitados por la Sra. García Joglar. Por ende, no procede la aplicación de la Cobertura A a favor del Cuerpo de Bomberos y, consecuentemente, el TPI incurrió en el primer planteamiento de error señalado por Antilles.

---

[23] *Íd.*, pág. 241.
[24] *Íd.*, pág. 253.

Por otro lado, aunque los contratos de seguro son considerados acuerdos de adhesión, ello "*no* tiene el efecto de obligar a que se interprete a favor del asegurado una cláusula que favorece al asegurador y cuyo significado y alcance es claro y libre de ambigüedad". *Quiñones López v. Manzano Pozas, supra,* pág. 155. (Énfasis suplido en el original). Si bien las cláusulas de exclusión deben interpretarse restrictivamente en contra del asegurador, "si el lenguaje del contrato es explícito, no queda margen para interpretaciones que violenten obligaciones contraídas al amparo de la ley, que se atengan a lo acordado por las partes y que no contravengan el interés público". *Rivera v. Insurance Co. of P.R., supra,* págs. 93-94.

En esa misma línea, nuestro máximo foro ha indicado que en los casos en los cuales una póliza no incluye una definición para "servicios profesionales", se utiliza su acepción legal. *Viruet et al. v. SLG Casiano-Reyes, supra,* pág. 280. "[S]e ha resuelto que un servicio profesional conlleva una vocación, llamado, ocupación o empleo que supone, además, algún tipo de conocimiento, labor o <u>destreza especializada</u>. Asimismo, las habilidades que requiere un servicio profesional son predominantemente intelectuales o mentales, no físicas o manuales". *Viruet et al. v. SLG Casiano-Reyes, supra,* págs. 282-281. (Énfasis suplido). A su vez, el concepto "profesional" implica la utilización del discernimiento, según los criterios infundidos por medio de estudios o a base de algún conocimiento especializado. *Viruet et al. v. SLG Casiano-Reyes, supra,* pág. 281. Es decir, " 'quedan excluidas las actividades que envuelven *simplemente* tareas físicas, manuales o clericales' ". *Viruet et al. v. SLG Casiano-Reyes, supra,* pág. 281 (*citando a Neighborhood Housing Services v. Turner-Ridley,* 742 F.Supp.2d 964 (N.D. Ind. 2010)) (Énfasis suplido).

En el presente caso, la póliza define *servicios profesionales* como "*Any Professional Service of any kind or nature.*"[25] Además, expone la siguiente cláusula de exclusión:

> With respect to any professional services shown in the Schedule, the following exclusion is added to Paragraph **2. Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**
>
> **This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" due to the rendering of or failure to render any professional service.**
>
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional service.[26]
>
> (Énfasis suplido).

De lo anterior se puede colegir que, según la póliza, los servicios profesionales constituyen cualquier servicio profesional de cualquier tipo o naturaleza. Según la jurisprudencia, al existir una definición respecto a este término en la cubierta, no es necesario acudir a su acepción legal. A pesar de ello, los servicios brindados por el Cuerpo de Bomberos caerían bajo servicios profesionales. Tal como indicamos, "la exclusión de servicios profesionales no se limita a las profesiones tradicionales tales como abogados, médicos, arquitectos e ingenieros". *Viruet et al. v. SLG Casiano-Reyes, supra*, pág. 281. Sino que, el concepto "profesional" implica la utilización del discernimiento, según los criterios infundidos por medio de estudios o a base de algún conocimiento especializado, y "un servicio profesional conlleva una vocación, llamado, ocupación o empleo que supone, además, algún tipo de conocimiento, labor o <u>destreza</u>

---

[25] *Íd.*, pág. 258.
[26] *Íd.*

<u>especializada"</u>. *Viruet et al. v. SLG Casiano-Reyes, supra,* págs. 282-281.

Según la *"Ley del Departamento de Seguridad Pública de Puerto Rico"*, Ley Núm. 20 del 10 de abril de 2017 (Ley Núm. 20-2017), según enmendada, 25 LPRA sec. 3502, "bombero" es "aquel miembro del Negociado de Bomberos que está <u>debidamente adiestrado</u> y que directamente desempeña tareas encaminadas a garantizar la protección de los ciudadanos contra incendios, prevenir y combatir fuegos, salvar vidas y determinar el origen y causa del incendio. Esta definición incluye aquellos bomberos que se desempeñan como <u>Inspectores</u>". (Énfasis suplido). Asimismo, "inspector" es aquel "bombero que está <u>debidamente adiestrado</u> y que directamente desempeña tareas encaminadas a la prevención de incendios". Artículo 2.03 (g) de la Ley Núm. 20-2017, *supra*, sec. 3563. (Énfasis suplido). De igual modo, el "Negociado del Cuerpo de Bomberos" es "el organismo gubernamental cuya obligación será, entre otras dispuestas en esta Ley, prevenir y combatir fuegos, salvar vidas, garantizar a los ciudadanos en general una protección adecuada contra incendios, así como determinar, una vez ocurrido el siniestro, el origen y las causas del incendio." Artículo 2.03 (c) de la Ley Núm. 20-2017, *supra,* sec. 3563. Por lo tanto, como los bomberos deben estar debidamente adiestrados para brindar los servicios como parte del Cuerpo de Bomberos, los servicios brindados por estos, se considerarían servicios profesionales.

Sin embargo, aun cuando estamos de acuerdo en la clasificación de servicios profesionales, se imposibilita aplicar la cláusula de exclusión. Toda vez que la misma dispone *"[t]his insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" due to the rendering of or failure to*

*render any professional service.*"[27] Por lo tanto, habiendo establecido que los daños morales no están cobijados bajo el concepto de "*bodily injury,*" según la definición provista por la póliza, indistintamente de que se entienda que los servicios de los bomberos serían profesionales, la cláusula de exclusión es inaplicable al caso de autos. Ahora bien, entendemos que el foro primario erró en el análisis del <u>segundo</u> señalamiento de error, ya que descartó la aplicación de la cláusula por tratarse de una negligencia causada por una agencia y no por las razones antes descritas.

Por otro lado, el foro primario cometió el <u>tercer</u> planteamiento de error, pues Puerto Rico cae dentro de lo que constituye "*coverage territory,*" y así se desprende expresamente de la póliza:

> **4. "Coverage territory" means:**
> **a.** The United States of America (including its territories and possessions), **Puerto Rico** and Canada;
>
> **b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph a. above; or
>
> **c.** All other parts of the world if the injury or damage arises out of:
>
> > **(1)** Goods or products made or sold by you in the territory described in Paragraph a. above;
> >
> > **(2)** The activities of a person whose home is in the territory described in Paragraph a. above, but is away for a short time on your business; or
> >
> > **(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication; provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph a. above or in a settlement we agree to.
>
> . . . .
>
> (Énfasis suplido).[28]

---

[27] *Íd.*
[28] *Íd.*, pág. 253.

Por último, y luego de un análisis objetivo y cuidadoso del expediente ante esta Curia, conforme a la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, nos abstenemos de ejercer nuestra función revisora y de intervenir con la determinación del foro *a quo* la *Resolución* emitida el 18 de julio de 2025 declarando No Ha Lugar la solicitud de desestimación de la AAA, a la cual se unió MAPFRE. El expediente del caso de epígrafe no evidencia falta alguna atribuible al TPI en la ejecución de sus funciones adjudicativas, de modo que resulte meritorio expresarnos sobre lo resuelto en esta etapa de los procedimientos.

**IV.**

Por las razones discutidas anteriormente, denegamos la expedición del recurso de *certiorari* de la AAA y MAPFRE; y expedimos el auto de *certiorari* de Antilles, y consecuentemente, revocamos la ***Resolución* emitida el 21 de julio de 2025**.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

La jueza Rivera Marchand concurre con el resultado sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones